United States District Court
Southern District of Texas

**ENTERED**

January 19, 2024

Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| ABEL GARCIA-PEREZ, | § | |
| A-1076-22 | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 7:22-CV-130 |
| | § | |
| VS. | § | |
| | § | |
| J.E. EDDIE GUERRA, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

### REPORT AND RECOMMENDATION

Plaintiff Abel Garcia-Perez, currently incarcerated at the Hidalgo County Adult Detention Center (HCADC), has filed a complaint, as amended, under 42 U.S.C. § 1983 alleging violations of his civil rights.  Garcia-Perez represents himself and has been granted leave to proceed *in forma pauperis*.  The live pleadings in this case are the amended complaint (Docket No. 4),[1] the supplemental pleadings (Docket No. 9),[2] and the more definite statement (Docket No. 18).[3]  The

---

[1] An amended complaint replaces the original complaint.  *See Moore v. Melvin*, 42 F.3d 642, 1994 WL 708686, at *4 n.8 (5th Cir. 1994); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

[2] In the court's order of January 10, 2023, the court granted Garcia-Perez's motion for leave to file supplemental pleadings.  (*See* Docket No. 14.)  The supplemental pleadings are contained at Docket No. 9.

[3] A *pro se* prisoner's response to a court's questionnaire or order for more definite statement is considered part of the complaint.  *See Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976) ("Because the answers to the questionnaire will effectively amplify the original allegations in the prisoner's complaint, cf. Rule 15(a), F. R. Civ. P., they are an integral part of that complaint and not a separate, independent pleading."); *see also Requena-Villareal v. Almeida*, No. 1:17-cv-143, 2019 WL 1509141, at *3 (S.D. Tex. March 7, 2019) (noting that a prisoner's response to an order for more definite statement is "not a separate, independent pleading," but "a necessary pleading auxiliary . . . in order that the court may assess the factual and legal bases of the claim[s] asserted.") (quoting *Watson*, 525 F.2d at 892).

defendants named in the amended complaint are: (1) J.E. "Eddie" Guerra, Hidalgo County Sheriff; (2) Jose R. Vasquez, Captain at the HCADC; (3) David Flores, First Lieutenant at the HCADC; (4) Anna Karen Flores, a registered nurse at the HCADC; (5) Dr. John Lung, a physician at the HCADC; and (6) "Unknown Person in Charge for Facebook Intellectual Communications."

This case has been referred to the undersigned magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b).  After carefully considering the pleadings, the record, and the applicable law, the undersigned recommends that Garcia-Perez's complaint be **DISMISSED with prejudice** for failure to state a claim.

## I.     BACKGROUND

Garcia-Perez initiated the instant action regarding complaints about his medical care and conditions of confinement at the HCADC.  He was arrested in December 2021 on state criminal charges of sexual assault of a child under age 14, aggravated sexual assault of a child, and indecency with a child.  (Docket No. 18 at 1–2.)  He is currently confined at the HCADC while he awaits trial on the pending state charges.

The court examines the factual allegations contained in the pleadings against each defendant in turn.  *See Cope v. Cogdill*, 3 F.4th 198, 207 (5th Cir. 2021) (explaining that "[w]hen multiple officials are named as defendants, [the Fifth Circuit] evaluate[s] each officer's actions separately, to the extent possible") (internal quotation marks and citation omitted).

### A.     Lieutenant David Flores

In the amended complaint, Garcia-Perez asserts that Lieutenant Flores "has failed to duly perform his duty where there is no proper and adequate training . . . ."  (Docket No. 4 at 5.)  When asked to provide more details in support of his failure-to-train claim, Garcia-Perez states that after he was beaten by another inmate on March 9, 2022, neither the jail correctional officers nor

2

medical officers made a report or initiated disciplinary action against the inmate who attacked him. (Docket No. 18 at 2–3.)  Garcia-Perez further claims that the correctional officers at the jail are "not properly trained to take control of any situation involving violence in a humane and professional or unreasonable manner," and because Flores is the First Lieutenant at the jail, he is "responsible and should be held liable for failure to properly train all correctional officers on duty to properly treat inmates with human dignity and equal protection from any risk of harm by self, other inmates, or officials."  (*Id.* at 2–3.)

Garcia-Perez also asserts that Lieutenant Flores—who is "in charge of resolving complaints" at the jail—has failed to respond to or resolve various complaints he has filed, including one about property that was taken from him and another complaint concerning his placement in a crowded cell with sick inmates.  (*Id.* at 3.)

Last, Garcia-Perez asserts that he has complained to Lieutenant Flores about gnats that live or surface from the toilets and shower drains.  (*Id.* at 5.)  He states that although cleaning supplies of a broom, a mop, a mop bucket, and a scrub brush are passed to each cell block twice a day for cleaning, the jail does not provide disinfectants and that the showers and ceilings "appear to contain mold."  (*Id.* at 6.)

### B.    Anna Karen Flores, R.N.

Garcia-Perez describes Ms. Flores as "the head nurse in charge and responsible for all inmate medical care and needs."  (*Id.* at 8.)  He asserts that Ms. Flores "failed to authorize an immediate proper medical assistance to plaintiff on March 9, 2022[,]" after he was attacked by another inmate.  (Docket No. 4 at 6.)  In his more definite statement, Garcia-Perez clarifies that Ms. Flores was not on duty the day of the attack (March 9, 2022), and that he has never personally met Flores.  (Docket No. 18 at 8, 9.)  Instead, on March 9, he was seen by a licensed vocational

3

nurse at the jail who took his temperature and gave him ibuprofen for pain.  (*Id.* at 8.)  The licensed vocational nurse told Garcia-Perez that he needed an x-ray of his hand, but that Ms. Flores had to "okay" the request.  (*Id.*)  Eight days later, an x-ray of Garcia-Perez's hand was performed.  (*Id.*)  The x-ray revealed that Garcia-Perez's wrist, knuckle, and fingers were broken.  (Docket No. 4 at 6; Docket No. 18 at 8.)  One month later, Garcia-Perez was taken to see a bone and joint specialist, but "by the date HCADC took plaintiff to the specialist his bone structure was already attached and healed leaving plaintiff's hand in deformity appearance and restricted weakness inoperative disability."  (Docket No. 4 at 6; *see also* Docket No. 18 at 8, 9.)  Garcia-Perez states that his requests and grievances concerning his jaw and hand that were injured in the March 9 incident were not answered.  (Docket No. 18 at 8–9.)  He further claims that Ms. Flores did not respond to any of his requests or grievances regarding his hemorrhoids, and that the only response he received was "on tablet ticket [which said] 'you will be placed on the doctor's list.'"  (*Id.* at 10, 11.)

C.      **Dr. John Lung**

Dr. Lung is the "main principal doctor and physician who examines and prescribes medication to all inmates incarcerated in the HCADC."  (*Id.* at 14.)  Garcia-Perez argues that Dr. Lung should be "held liable . . . for all of R.N. Anna Karen's actions, negligence, and medical malpractice[.]"  (Docket No. 4 at 7.)  He further complains that Dr. Lung "takes up to [one] month to consult with inmates who file a medical request and therefore most of the times the sickness or pain one complains about has already healed, cured, or left by that time he/she is seen by [Dr.] Lung."  (Docket No. 18 at 14.)

Dr. Lung examined Garcia-Perez regarding his hemorrhoids in October 2022.  (*Id.* at 12.)  Dr. Lung prescribed hemorrhoid ointment and fiber pills.  (*Id.*)  Garcia-Perez has also been

4

prescribed 50mg of ibuprofen a day, a fiber pill one time a day, and medication for gastritis once a day for this affliction.  (*Id.* at 12–13.)

Dr. Lung again examined Garcia-Perez around January 10, 2023, where he took Garcia-Perez's temperature and re-prescribed the medication Garcia-Perez was currently taking.  (*Id.* at 15.)  Garcia-Perez claims that Dr. Lung told him that in order to receive surgery for his hemorrhoids / inflammatory bowel disease, he must qualify for Medicaid or personally pay for the surgery.  (*Id.* at 11, 16.)

### D.      Captain Jose Vasquez

Garcia-Perez alleges that Captain Vasquez ignores grievances and that he refuses to "properly and adequately resolve all or any issues within the jail with a positive or effective result." (Docket No. 4 at 4, 5.)  He also appears to claim that Captain Vasquez is responsible for the lack of "[]approp[r]iate supplies of cleaning utensils."  (Docket No. 18 at 14.)

### E.      Sheriff J.E. "Eddie" Guerra

As to Sheriff Guerra, Garcia-Perez claims that he has "failed to act and respond [to] all inmate complaints, issues, requests for investigation and resolution, grievances, etc. about the jail's inadequate, unhealthy, unsafe, and inhumane conditions and mistreatment and neglect by officials in charge."  (Docket No. 4 at 9.)  Garcia-Perez asserts that he sent Guerra "personal handwritten letters in [an] attempt to resolve all issues which until this day all letters have remained unresponded and problems have been unresolved."  (Docket No. 18 at 13; *see also* Docket No. 9 at 3.)

### F.      Unknown Person in Charge for Facebook Intellectual Communications

Garcia-Perez also sues "Unknown Person(s) in charge of Facebook Intellectual Communications, Inc."  (Docket No. 4 at 8.)  Garcia-Perez claims that this defendant revealed his

identity and location on the Hidalgo County "Busted" website without his permission or knowledge.  (*Id.*)  He asserts that the posted information "should be private, saved, and classified because such unproven accusations, allegations, or charges may not be public until the accused is found guilty by a court of law."  (*Id.*)

As relief, Garcia-Perez seeks monetary damages for "mental-emotional damages" and for his pain and suffering.  (*Id.* at 10.)  He also seeks transfer to another detention facility.[4]  (*Id.*)

## II.    **STANDARD OF REVIEW**

Because Garcia-Perez is an inmate who has been granted leave to proceed *in forma pauperis*, the Prison Litigation Reform Act requires the court to scrutinize the pleadings.  The court

---

[4] Attached to his more definite statement. Garcia-Perez attached a document he titled "Plaintiff's Supplemental Amendment of Complaint, Rule 15(d) Fed. R. Civ. Proc." (*See* Docket No. 18-1; Docket No. 19 (docketed separately by the Clerk's Office)).  To the extent Garcia-Perez intended to supplement his pleadings via this filing, this was an unauthorized filing by the plaintiff. In its order of December 6, 2022, the court specifically warned the plaintiff that "[n]o amendments or supplements to the complaint will be filed without prior court approval."  (Docket No. 13 at 2.) Garcia-Perez did not request court approval prior to filing this supplement to the complaint. Nevertheless, the court has reviewed the proposed supplement.  Except as specifically described in the following paragraph, the factual allegations in the proposed supplement concern individuals and events not related to the claims and defendants in this lawsuit.  Rule 18(a) of the Federal Rules of Civil Procedure only allows a plaintiff to join "as independent or as alternative claims, as many claims as it has against an opposing party."  Rule 20 allows the joinder of several parties only if the claims arose out of a single transaction and contain a question of fact or law common to all defendants.  In other words, "[u]nrelated claims against different defendants belong in different suits[.]"  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  By attempting to join multiple defendants and transactions, the complaint does not comport with Rule 18 and Rule 20 of the Federal Rules of Civil Procedure.  *See Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (discouraging "creative joinder of actions" by prisoners attempting to circumvent the three-strikes provision of the Prison Litigation Reform Act); *Applewhite v. Reichhold Chem., Inc.*, 67 F.3d 571, 574 n.11 (5th Cir. 1995) ("[Federal] Rule [of Civil Procedure] 20 requires that all of the plaintiffs' claims arise out of the same transaction or occurrence and that there is a common issue of fact or law.").  Thus, Garcia-Perez must file a new civil action concerning the allegations contained in the proposed supplement at Docket Entry No. 19 if he wishes to pursue those claims.

To the extent that the proposed supplement alleges facts concerning Garcia-Perez's claim that Dr. Lung provided inadequate medical care in regard to his hemorrhoids (*see* Docket No. 19 at 18–19), the court has considered those allegations in drafting this Report and Recommendation.

must dismiss the case at any time, in whole or in part, if it determines that the action is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  A dismissal under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) for failure to state a claim is governed by the same standard under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See DeMarco v. Davis*, 914 F.3d 383, 386 (5th Cir. 2019); *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013).  When considering whether the plaintiff has adequately stated a claim on which relief can be granted, the court examines whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Rogers*, 709 F.3d at 407 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Under this standard, the court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief."  *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (cleaned up).

Where the pleadings, viewed under the individual circumstances of the case, "demonstrate that the plaintiff has pleaded his best case[,]" dismissal on the pleadings is appropriate if the pleadings do not adequately state a cause of action.  *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986); *see also Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (per curiam); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (holding that a court may *sua sponte* dismiss for failure to state a claim "as long as the procedure employed is fair") (cleaned up).

In reviewing the pleadings, the court is mindful that Garcia-Perez represents himself. Courts construe *pro se* litigants' pleadings under a less stringent standard of review.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  Under this standard, "[a] document filed *pro se* is

'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Even under this lenient standard, a *pro se* plaintiff must allege more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Ashcroft*, 556 U.S. at 678 (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  No matter how well-pleaded the factual allegations may be, they must reveal that the plaintiff is entitled to relief under a valid legal theory.  *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *McCormick v. Stald*er, 105 F.3d 1059, 1061 (5th Cir. 1997).

## III.    <u>ANALYSIS</u>

Garcia-Perez alleges that the defendants have violated his constitutional rights.  "Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States . . . ." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (*quoting Maine v. Thiboutot*, 448 U.S. 1, 4 (1980)). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Thus, to state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing that (1) he has been deprived of a right secured by the Constitution or of federal law, and (2) the violation was committed by someone acting under color of state law.  *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).

"The constitutional rights of a pretrial detainee flow from the procedural and substantive due process guarantees of the Fourteenth Amendment . . . ."  *Gibbs v. Grimmette*, 254 F.3d 545,

8

548 (5th Cir. 2001) (citation omitted).  When evaluating the claims of a pretrial detainee contesting the conditions of his confinement, "[t]he standard is the same as that for a prisoner under the Eighth Amendment."  *Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020) (citing *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019)).

"[The Fifth Circuit] characterizes . . . § 1983 violations of a pretrial detainee's rights as either episodic-acts-or-omissions claims or conditions-of-confinement claims."  *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) (citing *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc)); *see also Cadena*, 946 F.3d at 727 ("A pretrial detainee may prove a constitutional violation either by demonstrating an unconstitutional condition of confinement or by demonstrating an unconstitutional episodic act or omission.") (citation omitted).

Because pre-trial detainees have not been convicted of a crime, conditions of confinement that "amount to punishment of the detainee" are unconstitutional.  *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  "A condition of confinement case is a [c]onstitutional attack[] on general conditions, practices, rules, or restrictions of pretrial confinement."  *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (internal quotation marks and citation omitted).  "A condition is usually the manifestation of an explicit policy or restriction: the number of bunks per cell, mail privileges, disciplinary segregation, etc."  *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (citing *Scott*, 114 F.3d at 53 n.2).

Under the test set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979), "a pretrial detainee cannot be subjected to conditions or restrictions that are not reasonably related to a legitimate governmental purpose."  *Hare*, 74 F.3d at 640.  Notably, the Constitution is not concerned with a *de minimus* level of imposition on pretrial detainees.  *Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996) (citing *Bell*, 441 U.S. at 539 n.21).

9

To prevail under a theory of an unconstitutional condition of confinement, a plaintiff must show:

> (1) a rule or restriction or . . . the existence of an identifiable intended condition or practice . . . [or] that the jail official's acts or omissions were sufficiently extended or pervasive; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [the inmate's] constitutional rights.

*Cadena*, 946 F.3d at 727 (internal quotation marks and citation omitted).  "To establish the first prong, a detainee . . . must show more than an isolated incident; he must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs." *Edler v. Hockley Cnty. Com'rs Ct.*, 589 F. App'x 664, 668 (5th Cir. 2014) (per curiam) (internal quotation marks and citation omitted).  "Proving a pattern is a heavy burden, one that has rarely been met in our case law." *Shepherd*, 591 F.3d at 452.

By contrast, "[a]n episodic-acts-or-omissions claim . . . faults specific jail officials for their acts or omissions." *Estate of Henson v. Wichita Cnty., Tex.*, 795 F.3d 456, 463 (5th Cir. 2015) (internal citation and quotation marks omitted).  "A jail official violates a pretrial detainee's constitutional right to be secure in his basic human needs only when the official had 'subjective knowledge of a substantial risk of the serious harm' to the detainee and responded to that risk with deliberate indifference." *Id.* at 464 (quoting *Hare*, 74 F.3d at 645); *see also Sanchez v. Young Cnty., Tex.*, 866 F.3d 274, 279 (5th Cir. 2017) ("The 'episodic acts and omissions' theory . . . requires a finding that particular jailers acted or failed to act with deliberate indifference to the detainee's needs.").  Deliberate indifference "means that: 1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2) the official actually drew that inference; and 3) the official's response indicates the official subjectively intended that harm occur." *Edler*, 589 F. App'x at 667–68 (citation omitted).

Based on the factual allegations contained in the plaintiff's pleadings, the court understands Garcia-Perez as alleging several claims, some of which fall under a conditions-of-confinement theory, and the others under an episodic-act-or-omission theory.[5]

### A.    Lieutenant Flores

#### 1.    Failure-to-train

Garcia-Perez has alleged that Lieutenant Flores has failed to train officers at the jail because no one made a report about him being attacked by another inmate on March 9 or initiated any disciplinary action against the inmate who attacked him.

It is not clear that Flores is the proper defendant for Garcia-Perez's failure-to-train claim. He claims that Flores is to blame for the failure to properly train jail staff because "when situations get hectic the 1st lieutenant is [the] person-in-charge.  Every corporal officer, sergeants, and regular COs always respond with . . . 'talk or send ticket to David Flores.'  It is obvious Flores is head of all HCADC officials, employees, and [personnel], therefore should be responsible for proper training and employment duties."  (Docket No. 18 at 4).  Just because Flores is allegedly in charge of the jail's grievance system does not mean he is the person responsible for all officer training at the jail.  Nonetheless, even assuming Flores is responsible for officer training, Garcia-Perez has failed to state an adequate failure-to-train claim, as discussed below.

Under 42 U.S.C. § 1983, a plaintiff cannot hold a supervisory official liable under a theory of vicarious liability.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691–95 (1978); *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).  Where, as here, a plaintiff asserts liability based on a failure to train or supervise, the plaintiff must show: (1) the supervisor

---

[5] Although Garcia-Perez does not characterize any of his claims as falling under either theory, a party's characterization of his claim as either a conditions-of-confinement claim or an episodic-act-or-omission claim is not controlling.  *See Garza*, 922 F.3d at 633–34.

either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.  *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) (citing *Estate of Davis*, 406 F.3d at 381).  The Supreme Court has observed that "[c]ulpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted); *see also Walker v. Upshaw*, 515 F. App'x 334, 340 (5th Cir. 2013) (per curiam).  "[A] showing of deliberate indifference requires that the Plaintiff[] show that the failure to train reflects a deliberate or conscious choice to endanger constitutional rights."  *Walker*, 515 F. App'x at 340 (cleaned up); *see also Porter v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011) ("To establish that a state actor disregarded a known or obvious consequence of his actions, there must be actual or constructive notice that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights and the actor nevertheless choose[s] to retain that program.") (internal quotation marks and citation omitted).  "It is well accepted that a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train."  *Walker*, 515 F. App'x at 340  (cleaned up).  "[F]or liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective."  *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)).  "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."  *Walker*, 515 F. App'x at 340.

Garcia-Perez has failed to state a valid failure-to-train claim.  First, he does not explain how an alleged failure on Flores's part to train officers to create reports after incidents between

12

inmates or a failure to train officers to discipline inmates lead to any of his alleged constitutional injuries.  Second, Garcia-Perez has not pleaded sufficient facts to support a finding of deliberate indifference by Flores.  Notably, he does not point to any examples of a pattern of similar constitutional violations.  Further, besides his general dissatisfaction with the grievance system, Garcia-Perez does not allege in what respects the training is defective.  *See Walker*, 515 F. App'x at 340 (explaining that "the inadequacy of training must be obvious and obviously likely to result in a constitutional violation.").  Thus, his claim regarding Flores's failure to train fails.  *See Speck v. Wiginton*, 606 F. App'x 733, 736–37 (5th Cir. 2015) (per curiam) (holding that summary dismissal was appropriate on the pleadings because the plaintiff did not allege a pattern of similar violations to show deliberate indifference and plaintiff's fact pattern did not support the rare "patently obvious" exception); *Goodman*, 571 F.3d at 395 (upholding district court's determination that plaintiff failed to set forth a failure-to-train claim when plaintiff did not point to any pattern of violations or deficiencies in the training program); *Edwards v. Oliver*, No. 3:17cv1208, 2019 WL 4603794, at *6 (N.D. Tex. Aug. 12, 2019) (holding dismissal on the pleadings was appropriate because the plaintiff had not alleged facts to show a pattern of similar violations), *R&R adopted by*, 2019 WL 4597573 (N.D. Tex. Sept. 23, 2019).

### 2.   Failure to resolve or respond to grievances

Garcia-Perez also asserts that Lieutenant Flores—who he says is "in charge of resolving complaints" at the jail—has failed to respond to or resolve various complaints he has filed, including one about property that was taken from him and another complaint concerning his placement in a crowded cell with sick inmates.  The court construes this claim as arising under an episodic-act-or-omission theory.

Garcia-Perez's claim that Flores has not responded to or resolved various complaints fails to state a claim on which relief may be granted because there is no constitutionally protected right to a prison grievance system, and the fact that a grievance or complaint was not investigated or resolved to an inmate's satisfaction does not implicate any constitutionally protected rights. *See Schwarzer v. Wainright*, 810 F. App'x 358, 360 (5th Cir. 2020) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (holding that prisoners do not have a federally protected liberty interest in having grievances resolved to their satisfaction); *Alexander v. Tex. Dep't of Crim. Just.*, 951 F.3d 236, 240 (5th Cir. 2020) (affirming trial court's dismissal of inmate's claim that his grievances were mishandled or improperly denied, as prisoners have no due-process rights in the inmate grievance process); *Grogan v. Kumar*, 873 F.3d 273, 280 (5th Cir. 2017) ("[I]t is well established that prisoners have no due process rights in the inmate grievance process.") (citation omitted); *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (per curiam) (holding that plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances); *Edmond v. Martin*, 100 F.3d 952, 1996 WL 625331, at *1 (5th Cir. 1996) (per curiam) (holding that inmate's claim that defendant's failure to investigate his grievance "raises no constitutional issue") (citation omitted).

### 3. Conditions at the jail

The court finds that Garcia-Perez's allegations concerning the conditions of his confinement while at the jail— namely, that gnats live on the surface of the toilets and shower drains, that the showers and ceilings appear to contain mold, and that although detainees are provided cleaning supplies, they are not specifically given "disinfectants"—is properly characterized as a condition-of-confinement claim. Garcia-Perez alleges that Flores knows about these hazardous conditions because Flores is "responsible for all grievances." (Docket No. 18 at

14

6.)  To prevail on this claim, Garcia-Perez must show "(1) a rule or restriction or . . . the existence of an identifiable intended condition or practice . . . [or] that the jail official's acts or omissions were sufficiently extended or pervasive;" "(2) which was not reasonably related to a legitimate governmental objective;" and "(3) which caused the violation of [the inmate's] constitutional rights."  *Cadena*, 946 F.3d at 727 (internal quotation marks and citation omitted).  "[A] detainee challenging jail conditions must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs; any lesser showing cannot prove punishment in violation of the detainee's Due Process rights."  *Estate of Bonilla v. Orange Cnty.*, 982 F.3d 298, 309 (5th Cir. 2020) (citing *Shepherd*, 591 F.3d at 454).

Garcia-Perez's claim that gnats live on the surface of the toilets and shower drains fails to state a claim for relief because "the mere presence of pests, such as gnats, does not amount to a constitutional violation."  *Maddox v. Gusman*, Civil Action No. 14-2435, 2015 WL 1274081, at *4 (E.D. La. Mar. 19, 2015) (citing cases); *see also Philips v. Tangipahoa Par. Jail*, No. CV-23-1833, 2023 WL 5219764, at *2 (E.D. La. July 21, 2023) (same), *R&R adopted by*, 2023 WL 5209153 (E.D. La. Aug. 14, 2023).

Garcia-Perez's allegations that "the showers and ceilings appear to contain mold" fails to state a claim for relief because courts have "repeatedly held that the mere fact that mold is present in a jail does not render an inmate's confinement unconstitutional."  *Smith v. Busman*, No. Civ. A. 14-1153-DEK, 2015 WL 2066517, at *2 (E.D. La. May 4, 2015) (citing cases); *see also Mahmoud v. Bowie*, 234 F.3d 29, 2000 WL 1568178, *2 (5th Cir. 2000) (per curiam) (affirming dismissal of pretrial detainee's claim that the shower and toilet area were unsanitary because it did "not rise to the level of [a] constitutional violation[]"); *Barnett v. Shaw*, No. 3:11-cv-399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (dismissing at screening stage plaintiff's claim that there was an

"excessive amount of black mold in the showers and sinks" because the complained of violation was not more than *de minimis*), *R&R adopted by*, 2011 WL 2214383 (N.D. Tex. June 7, 2011); *Reynolds v. Newcomer*, No. Civ. A, 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (dismissing the plaintiff's complaint about "the presence of black mold" in living, eating, and shower areas for failure to state a claim because the condition was not more than *de minimis*). Notably, Garcia-Perez has not alleged that he has suffered any harm from the apparent mold.  Put simply, "[t]he fact that a detention interfered with a prisoner's desire to live as comfortably as possible does not convert the conditions of confinement into punishment."  *Lee v. Hennigan*, 98 F. App'x 286, 288 (5th Cir. 2004) (per curiam).

Finally, Garcia-Perez's assertion that although he is provided with cleaning supplies—including a broom, a mop, a mop bucket, and a scrub brush—the lack of a disinfectant violates his constitutional rights fails to state a claim for relief because "[p]risoners simply are not entitled to the cleaning supplies of their choice."  *Thomas v. Gusman*, Civ. Action No. 11-1424, 2012 WL 607970, at *4 (E.D. La. Jan. 27, 2012) (dismissing as frivolous plaintiff's claim that the prison was unsanitary and that inmates were not given adequate cleaning supplies because not providing bleach to prisoners did not violate any constitutional rights), *R&R adopted by*, 2012 WL 607698 (E.D. La. Feb. 24, 2012); *see also Barnett*, 2011 WL 2200610, at *2 (dismissing at screening stage the plaintiff's claim that he was given "inadequate" cleaning supplies because the complained of violation was not more than *de minimis*); *Ellis v. Crowe*, No. Civ. A 09-3061, 2010 WL 724158, at *14 (E.D. La. Feb. 19, 2010) (finding that the plaintiff's allegation that although cleaning supplies were regularly provided the cleaning materials were not "the right stuff" should be dismissed for failure to state a claim); *Walker v. Davis*, No. 6:17cv166, 2019 WL 2465298, at *11 (E.D. Tex. Jan. 10, 2019) ("Although prisons should be reasonably clean, '[t]he Constitution does

not require that prisons be completely sanitized or as clean or free from potential hazards as one's own home might be.'") (quoting *McAllister v. Strain*, Civil Action No. 09-2823, 2009 U.S. Dist. LEXIS 120097, 2009 WL 5178316 (E.D. La. Dec. 23, 2009)), *R&R adopted by*, 2019 WL 1421152 (E.D. Tex. Mar. 28, 2019).[6]

It is recommended that the plaintiff's claims against Lieutenant David Flores be dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) for failure to state claim on which relief may be granted.

### B.     Dr. Lung

Garcia-Perez alleges that Dr. Lung violated his Fourteenth Amendment right to adequate medical care by not examining inmates in a timely manner, by "doing nothing" to help Garcia-Perez with his hemorrhoids, and by telling Garcia-Perez he would personally need to pay for surgery.   The plaintiff further argues that Dr. Lung should be liable for Ms. Flores's alleged malpractice.  Garcia-Perez's allegations against Dr. Lung are appropriately characterized as falling under an episodic-acts-or-omissions theory because Garcia-Perez claims that Dr. Lung's specific actions and omissions violated his rights.

"The Fourteenth Amendment guarantees pretrial detainees a right not to have their serious medical needs met with deliberate indifference on the part of the confining officials."  *Garcia v. City of Lubbock, Tex.*, No. 21-11134, 2023 WL 4636896, at *3 (5th Cir. July 20, 2023) (quoting

---

[6] To the extent Garcia-Perez alleges the conditions at the jail should be analyzed under an episodic act or omission theory against Flores, the court finds that the plaintiff has failed to establish that Flores acted with the requisite subjective deliberate indifference.  Flores allegedly being "responsible for all grievances" at the jail does not establish his active participation in the actions causing the alleged deprivation of Garcia-Perez's constitutional rights.  *See, e.g.*, *Cervantes v. Sanders*, No. 2:98-cv-187, 1998 WL 401628, at *2 (N.D. Tex. July 14, 1998) (finding that there was no personal involvement on the part of the defendant when he merely read the plaintiff's letter or grievance).

*Dyer v. Houston*, 955 F.3d 501, 506 (5th Cir. 2020)).  Under an episodic-act-or-omission theory, "a plaintiff must prove that an official acted or failed to act with deliberate indifference to the detainee's serious medical needs."  *Edler*, 589 F. App'x at 667 (citing *Hare*, 74 F.3d at 636). "Deliberate indifference is an extremely high standard to meet."  *Austin v. City of Pasadena, Tex.*, 74 F.4th 312, 328 (5th Cir. July 18, 2023) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)).  "To succeed on a deliberate-indifference claim, plaintiffs must show (1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) the official actually drew that inference."  *Id.* (internal citation and quotation marks omitted).  A defendant "acts with deliberate indifference to a detainee's serious medical needs if the officer refuse[s] to treat him, ignore[s] his complaints, intentionally treat[s] him incorrectly, or engage[s] in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Id.* (quoting *Sims v. Griffin*, 35 F.4th 945, 951 (5th Cir. 2022)); *see also Baughman v. Hickman*, 935 F.3d 302, 309 (5th Cir. 2019) (quoting *Perniciaro v. Lea*, 901 F.3d 241, 258 (5th Cir. 2018)).

Garcia-Perez's argument that Dr. Lung should be held liable "for all of [Ms. Flores]'s actions, negligence, and medical malpractice" fails for two reasons.  First, "claims based on unsuccessful medical treatment, negligence, or medical malpractice" are "insufficient to show deliberate indifference[.]"  *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018); *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) ("[M]alpractice and negligent treatment do not rise to the level of a constitutional tort . . . .") (citation omitted); *Kimble v. Correcthealth Jefferson, L.L.C.*, No. 22-30388, 2023 WL 3946437, at *2 (5th Cir. June 12, 2023) (per curiam) (explaining that "acts of negligence" and "medical malpractice" "are not enough to meet the deliberate indifference standard") (cleaned up).  Second, supervisory defendants are not liable

under § 1983 for the actions of subordinates "on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) (citations omitted).   Garcia-Perez's claim that attempts to hold Dr. Lung liable for the alleged malpractice of Ms. Flores must be dismissed for failure to state a claim.

Next, Garcia-Perez alleges that despite filing several requests about his hemorrhoids, Dr. Lung "has done nothing to his authority to help me" and instead Dr. Lung "ridiculed" and "laughed at" him, saying he would prescribe Garcia-Perez "pampers."  (Docket No. 18 at 11, 15.)  Although Garcia-Perez makes a general accusation that Dr. Lung has not anything to help him with his hemorrhoids, the pleadings show that Dr. Lung did not fail to treat Garcia-Perez or ignore his complaints; Dr. Lung examined Garcia-Perez in October 2022 regarding his hemorrhoids and prescribed him hemorrhoid ointment and fiber pills.  Garcia-Perez has also been prescribed 50mg of ibuprofen a day and medication for gastritis.   Dr. Lung again examined Garcia-Perez in January 2023 and re-prescribed Garcia-Perez's medication.   Although Garcia-Perez is apparently not satisfied with the care provided by Dr. Lung, the factual allegations in the pleadings do not rise to the level of deliberate indifference.  "Disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are insufficient to support a deliberate indifference claim." *Matthews v. Fleming*, Civil Action No. 3:05-CV-1408-L, 2010 WL 669447, at *4 (N.D. Tex. Feb. 25, 2010) (citing *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) and *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991)).

Garcia-Perez also takes issue with Dr. Lung informing him that in order to receive surgery for his hemorrhoids / inflammatory bowel disease, he would have to personally pay for the surgery or qualify for Medicaid.  Garcia-Perez claims that a physician in McAllen had recommended that he have surgery, and that he was in fact scheduled for surgery in February 2021, but he missed that

surgery because he was "relocated to Des Moines." (Docket No. 18 at 11.) Here, Dr. Lung's "decision of whether to provide certain treatment—here, the decision to treat [Garcia-Perez's] hemorrhoids medically and not surgically—'is a classic example of a matter of medical judgment.'" *Campbell v. Brown*, 756 F. App'x 386, 389 (5th Cir. 2018) (per curiam) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). "[A] prisoner's disagreement with a particular course of treatment or a doctor's professional decision not to pursue additional treatment options" does not amount to deliberate indifference. *Id.* at 389; *see also Clark v. Raimer*, No. CIV. A, 9:07cv290, 2008 WL 346361, at *3 (E.D. Tex. Feb. 6, 2008) ("The fact that [the plaintiff] disagreed with the treatment that he received, based on his personal belief that he should have surgery . . . does not show that a constitutional violation occurred.") (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)); *Stafford v. Kelly*, No. 4:09cv133, 2011 WL 2633034, at *2 (N.D. Miss. June 3, 2011) ("The fact that one doctor recommended a particular course of treatment and that the treatment was not provided is no evidence of deliberate indifference. It merely shows that there was a difference of opinions between doctors.") (citing *Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999), *Clifford v. Does*, 2008 WL 5210663, at *1 (5th Cir. Dec. 15, 2008) (per curiam), and *Flores v. Okoye*, 196 F. App'x 235, at *236 (5th Cir. July 18, 2006)), *R&R adopted by*, 2011 WL 2633174 (N.D. Miss. July 5, 2011).

Furthermore, Dr. Lung informing Garcia-Perez that he would have to qualify for Medicaid or pay for his own surgery does not state a claim for deliberate indifference to serious medical needs. *See, e.g.*, *Perryman v. Wilson*, No. 4:19-cv-199-P, 2020 WL 1159387, at *8 (N.D. Tex. Mar. 10, 2020) ("[E]ven if cost considerations played some role in making the treatment decision, so long as medical care was provided to plaintiff to treat his condition, there is not a constitutional

violation.") (citation omitted); *Barnett*, 2011 WL 2200610, at *5 (N.D. Tex. May 18, 2011) ("Prisoners are not entitled to unqualified access to health care . . . .").

Finally, to the extent Garcia-Perez is complaining that Dr. Lung taking up to one month to consult with him about his own personal medical complaints violated his constitutional rights, he has failed to state a claim on which relief may be granted.[7]  Although the delay of medical care can constitute a constitutional violation, there must have "been deliberate indifference [that] results in substantial harm." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993)); *see also Kimble*, 2023 WL 3946437, at *2.  Garcia-Perez does not allege any facts that indicate that a delay caused by Dr. Lung has resulted in him suffering substantial harm.  In fact, Garcia-Perez states that "most of the times that I personally have seen Doctor Lung I already forgot what I had put in a request for."  (Docket No. 18 at 15.) Garcia-Perez's inability to remember the alleged need for medical assistance does not support a claim for deliberate indifference on the part of Dr. Lung.

It is recommended that the plaintiff's claims against Dr. John Lung be dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) for failure to state claim on which relief may be granted.

### C.    Ms. Flores, R.N.

Garcia-Perez alleges in his pleadings that Ms. Flores has violated his constitutional rights because she failed to authorize "immediate proper medical assistance" after the March 9 incident

---

[7] Garcia-Perez asserts that Dr. Lung "takes up to 1 month to consult with inmates who file a medical request." (Docket No. 18 at 14.) If Garcia-Perez is attempting to bring a claim on behalf of other inmates at the jail, he cannot do so. *See Gregory v. McKennon*, 430 F. App'x 306, 310 (5th Cir. 2011) (per curiam) (explaining that *pro se* prisoner plaintiff has no standing to sue on behalf of other prisoners).

and because she did not respond to his grievances.  These claims are appropriately characterized as falling under an episodic-acts-or-omissions theory because they concern a particular act or omission by one official.[8]

As discussed above, "[t]o succeed on a deliberate-indifference claim, plaintiffs must show (1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) the official actually drew that inference."  *Austin*, 74 F.4th at 328 (internal citation and quotation marks omitted).  A defendant cannot be liable for denial of medical treatment unless he has actual knowledge of an excessive risk to the inmate's health or safety. *Perniciaro*, 901 F.3d at 258 ("Liability attaches only when an official has actual knowledge of a substantial risk of serious harm.") (citation omitted); *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010) ("Deliberate indifference implies an official's actual knowledge of facts showing that a risk of serious harm exists as well as the official's having actually drawn that inference.") (citation omitted); *Lawson v. Dallas Cnty.*, 286 F.3d 257, 262–63 (5th Cir. 2002) ("Deliberate indifference requires actual knowledge and conscious disregard of the risk of harm to the plaintiff.  Deliberate indifference cannot be inferred from a prison official's mere failure to act reasonably, i.e., it cannot be inferred from negligence alone.") (citations omitted).

The facts of this case do not support a claim of deliberate indifference to serious medical needs against Ms. Flores.  Garcia-Perez asserts that Ms. Flores "failed to authorize an immediate proper medical assistance . . . on March 9, 2022" after he was attacked by another inmate; however,

---

[8] Although Garcia-Perez alleges that Ms. Flores has violated his Eighth Amendment rights, his claims are properly brought under the Fourteenth Amendment.  The Eighth Amendment protects the safety of convicted prisoners, while due process under the Fourteenth Amendment protects pretrial detainees.  *See Hare*, 74 F.3d at 639.  The proper analysis of each category of claims is the same because the "[Fifth Circuit] has based its Fourteenth Amendment case law concerning pretrial detainees on the Supreme Court's Eighth Amendment precedent concerning prisoners."  *Garza*, 922 F.3d at 634.

Garcia-Perez admits that Ms. Flores was not on duty at the jail the day of the incident and that he has never personally met Ms. Flores.  Garcia-Perez has failed to allege any facts that indicate that Ms. Flores had actual knowledge on March 9 "of facts from which an inference of an excessive risk to [Garcia-Perez]'s health or safety could be drawn," nor does he allege that Ms. Flores "subjectively drew an inference that such potential for harm existed."  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015).  A defendant's personal involvement is an essential element of a civil-rights cause of action, and he can only be liable for a deliberate-indifference claim when he has actual knowledge of a substantial risk of serious harm.  *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); *Perniciaro*, 901 F.3d at 258; *Brown*, 623 F.3d at 255; *Lawson*, 286 F.3d at 262–63.  Because Garcia-Perez's allegations do not support that Ms. Flores had actual knowledge that he was in need of "immediate proper medical assistance" on March 9, this claim against Ms. Flores must be dismissed for failure to state a claim upon which relief may be granted.  Importantly, the court notes that Garcia-Perez did in fact receive medical care on March 9; he was examined by a nurse at the jail and was given pain medication.

The claim that Ms. Flores did not respond to the plaintiff's grievances must be dismissed for failure to state a claim because there is no constitutionally protected right to a prison grievance system, and the fact that a grievance or complaint was not investigated or resolved to an inmate's satisfaction does not implicate any constitutionally protected rights.  *See Schwarzer*, 810 F. App'x at 360 (citing *Sandin*, 515 U.S. at 484); *Geiger*, 404 F.3d at 374; *Alexander*, 951 F.3d at 240; *Grogan*, 873 F.3d at 280; *Mahogany*, 252 F. App'x at 595; *Edmond*, 1996 WL 625331, at *1.

It is recommended that the plaintiff's claims against Anna Flores be dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) for failure to state claim on which relief may be granted.

### D.    Captain Vasquez

Garcia-Perez alleges that Captain Vasquez ignores grievances and that he refuses to "properly and adequately resolve all or any issues within the jail with a positive or effective result." He also appears to claim that Captain Vasquez is responsible for the lack of "[]approp[r]iate supplies of cleaning utensils."  These claims are appropriately characterized as falling under an episodic-acts-or-omissions theory.

Garcia-Perez's claim that Captain Vasquez ignores grievances and refuses to "properly and adequately" resolve issues at the jail "with a positive or effective result" fails to state a claim on which relief may be granted because, as discussed above, there is no constitutionally protected right to a prison grievance system, and the fact that a grievance or complaint was not investigated or resolved to an inmate's satisfaction does not implicate any constitutionally protected rights.  *See Schwarzer*, 810 F. App'x at 360 (citing *Sandin*, 515 U.S. at 484); *Geiger*, 404 F.3d at 374; *Alexander*, 951 F.3d at 240; *Grogan*, 873 F.3d at 280; *Mahogany*, 252 F. App'x at 595; *Edmond*, 1996 WL 625331, at *1.

To the extent that Garcia-Perez is alleging that Captain Vasquez violated his Fourteenth Amendment rights because Vasquez is in charge of the "[]approp[r]iate supplies of cleaning utensils," Garcia-Perez has again failed to state a claim for relief.  He has not alleged any facts that indicate that Vasquez acted with deliberate indifference to his health or safety.  Nor does he explain how the "supplies of cleaning utensils" are inappropriate, or how he has been injured by this alleged deficiency.

It is recommended that the plaintiff's claims against Captain Jose Vasquez be dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) for failure to state claim on which relief may be granted.

### E.     Sheriff Guerra

Garcia-Perez asserts that Sheriff Guerra has failed to respond to his complaints and letters.

As a supervisory official, Sheriff Guerra is not liable under § 1983 for the actions of subordinates "on any theory of vicarious liability." *Thompkins*, 828 F.2d at 303 (citations omitted). Rather, "[a] supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008) (citation omitted).

Garcia-Perez does not plead any facts showing that Sheriff Guerra had any personal involvement in the factual allegations made the basis of this lawsuit.  Simply because Sheriff Guerra may have received or read one of Garcia-Perez's letters or grievances does not establish Guerra's active participation in the actions causing the alleged deprivation of Garcia-Perez's constitutional rights.  *See, e.g.*, *Cervantes v. Sanders*, No. 2:98-cv-187, 1998 WL 401628, at *2 (N.D. Tex. July 14, 1998) (finding that there was no personal involvement on the part of the defendant when he merely read the plaintiff's letter or grievance); *Gray v. Webb*, No. 5:20CV121, 2023 WL 5517583, at *4 (E.D. Tex. May 2, 2023) ("[W]ardens cannot be expected to intervene personally in response to every inmate complaint or letter they receive.") (citing *Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir. 2004)), *R&R adopted by*, 2023 WL 5510297 (E.D. Tex. Aug. 25, 2023); *Shafer v. Collier*, No. 6:19CV114, 2020 WL 7074606, at *10 (E.D. Tex. Oct. 14, 2020) ("The fact that [the plaintiff] wrote to [the warden] asking for an [offender protection investigation]

and did not receive a response does not show a constitutional violation, even assuming the warden received or saw [the plaintiff's] letter."), *R&R adopted by*, 2020 WL 7063671 (E.D. Tex. Dec. 2, 2020); *Keys v. United States*, No. 3:17-cv-2940, 2020 WL 2753143, at *4 (N.D. Tex. Apr. 20, 2020) (explaining that a "failure to respond to a letter or grievance does not rise to the required level of personal involvement for liability"), *R&R adopted by*, 2020 WL 2745604 (N.D. Tex. May 27, 2020).  Nor does Garcia-Perez allege that Sheriff Geurra implemented unconstitutional policies that resulted in his constitutional injuries.

Moreover, a failure to respond to an inmate's letter does not create a constitutional injury because, as explained above, a grievance or complaint not being investigated or resolved to an inmate's satisfaction does not implicate any constitutionally protected rights.  *See, e.g.*, *Schwarzer*, 810 F. App'x at 360; *Geiger*, 404 F.3d at 374 (holding that prisoners do not have a federally protected liberty interest in having grievances resolved to their satisfaction); *Mahogany*, 252 F. App'x at 595 (holding that plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances); *Edmond*, 1996 WL 625331, at *1 (holding that inmate's claim that defendant's failure to investigate his grievance "raises no constitutional issue") (citation omitted).

Accordingly, the plaintiff's claims against Sheriff Guerra should be dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) for failure to state claim on which relief may be granted.

### F.    Unknown Person in Charge for Facebook Intellectual Communications

Garcia-Perez has sued "Unknown Person(s) in charge of Facebook Intellectual Communications, Inc," alleging that this defendant revealed his identity and location on the HCADC's "Busted" website without his permission or knowledge.  Garcia-Perez asserts that the

posted information "should be private, saved, and classified because such unproven accusations, allegations, or charges may not be public until the accused is found guilty by a court of law."

The court understands Garcia-Perez as asserting a violation of his Fourth Amendment right to privacy based on his identity and arrest record being posted on the Hidalgo County Jail's "Busted" Facebook webpage. This allegation fails to state a claim for relief. "[A]rrest records and related information are not protected by a right to privacy." *Paul P. v. Verniero*, 170 F.3d 396, 403 (3d Cir. 1999) (citing cases); *see also Lott v. City of Lubbock, Tex.*, 184 F.3d 819, 1999 WL 500689, at *2 (5th Cir. 1999) (per curiam) (observing that "[s]everal of our sister circuits have held that criminal histories are matters of public record in which no constitutional privacy interests exist" but declining to address the constitutional issue in the instant case because the case could be resolved on another basis); *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995) ("Information readily available to the public is not protected by the constitutional right to privacy. Consequently, government disclosures of arrest records, judicial proceedings, and information contained in police reports, do not implicate the right to privacy.") (internal citations omitted); *Holman v. Cent. Ark. Broad. Co.*, 610 F.2d 542, 544 (8th Cir. 1979) ("[N]o right to privacy is invaded when state officials allow or facilitate publication of an official act such as an arrest."); *Randolph-Ali v. Steelton Police Dep't*, No. 1:16-cv-1625, 2016 WL 11270010, at *8 (M.D. Pa. Nov. 3, 2016) (dismissing plaintiff's civil-rights claim for the invasion of her right to privacy for failure to state a claim because the distribution of plaintiff's mugshot and arrest information were not protected by a right to privacy), *R&R adopted by*, 2017 WL 192157 (M.D. Pa. Jan. 18, 2017).

To the extent Garcia-Perez is suing an individual employed by Facebook, he has not alleged any facts indicating that this defendant qualifies as a state actor for purposes of § 1983 liability. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing that his federally

protected rights were deprived by someone acting under color of state law.  *See Flagg Bros., Inc.*, 436 U.S. at 155; *Atteberry*, 430 F.3d at 252–53.

It is recommended that the plaintiff's claims against "Unknown Person in Charge for Facebook Intellectual Communications" be dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) for failure to state claim on which relief may be granted.

## IV.     <u>CONCLUSION</u>

### *Recommended Disposition*

After careful review of the record and relevant law, the undersigned recommends that the civil action filed by Plaintiff Abel Garcia-Perez be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B) for failure to state a claim on which relief may be granted.[9]

### *Notice to the Parties*

The Clerk shall send copies of this Report and Recommendation to Plaintiff, who has fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal

---

[9] In light of the fact that Garcia-Perez has filed an amended complaint, a supplement to the amended complaint, and a lengthy more definite statement, the court is satisfied that he has pleaded his best case and that dismissal with prejudice is appropriate.  *See Brewster*, 587 F.3d at 768; *Jacquez*, 801 F.2d at 793.

the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

The Clerk shall provide a copy of this Order to Plaintiff.

SO ORDERED, the 17th of January, 2024 at McAllen, Texas.

NADIA S. MEDRANO
United States Magistrate Judge